Miles F. McDonald, J.
The petitioner, Motor Vehicle Accident Indemnification Corporation, hereinafter referred to as MVAIC, moves for an order permanently staying the claimant Peggy Shumate, also known as Peggy Coleman, from proceeding to arbitration with the Motor Vehicle Accident Indemnification *32 Corporation. This application is based upon a factual situation which, unfortunately, is deceptively simple, for the issues of law presented thereby are extremely complex.
The uncontroverted facts are as follows:
On January 24, 1964, the plaintiff-respondent, a passenger in an automobile owned and operated by one Arnold A. V. Bowers, was involved in a single-car automobile accident.
Pursuant to section 608 of the Insurance Law, on April 16, 1964, the claimant-respondent Peggy Shumate, apparently in the capacity of a “ qualified person ” filed a notice of intention with the MVAIC to claim against the corporation on the ground that she was injured as the result of an accident in which a vehicle, registered No. 3395 was involved, by reason of the “ possibility of uninsured car ’ ’ owned by ‘ ‘ Arnold, last name unknown, address unknown.” However, at the time of the accident, Bowers, the owner and operator of the motor vehicle, was, in fact, the holder of an automobile liability insurance policy issued by the .¿Etna Casualty and Surety Company, which bore the MVAIC indorsement required pursuant to subdivision 2-a of section 167 of the Insurance Law. Subsequently, the -¿Etna Casualty Insurance Company, the carrier, on or about January 28, 1965, disclaimed coverage to Bowers and notified Bowers to that effect. The disclaimer was based upon the failure of Bowers to give timely notice of the accident.
The validity of the disclaimer by the insurance company is not challenged by the claimant-respondent and no issue is raised with respect thereto. Notification of disclaimer was sent to the claimant-respondent’s attorney on May 26, 1965. On March 15,1966, the claimant-respondent, apparently abandoning her contention that she intended to proceed as a “ qualified person ” under section 600 et seq. of the Insurance Law, and now claiming to be an “ insured person ’ ’ under the MVAIC indorsement on the policy issued to Bowers, served on MVAIC a demand for arbitration in accordance with the provisions of the policy indorsement. The demand contained a 10-day caveat as provided in CPLR 7503 (subd. [e]).
Upon this application the petitioner contends that the claimant-respondent is not an “ insured person ” within the meaning of subdivision 2-a of section 167 of the Insurance Law, and the policy indorsement issued pursuant thereto, and that the motor vehicle in which the claimant-respondent was a passenger is not an ‘ ‘ uninsured vehicle ’ ’ within the meaning of the indorsement attached to Bowers’ insurance policy. The confusion arises from the fact that the term “ insured person ” has a different *33 meaning when used in section 600 et seq. than it does when used in the MVAIC indorsement under subdivision 2-a of section 167.
While there is a plethora of decisions in which issues of a similar nature have been presented to and determined by the courts, there is no determination with respect thereto by the Appellate Division in this Department or by the Court of Appeals. Decisions throughout the State, in various courts, both trial and appellate, have arrived at what are apparently conflicting and irreconcilable determinations. These decisions are unfortunately based upon isolated phrases contained in the indorsement and not to the indorsement or the legislative scheme as a whole. Unfortunately, terms and provisions of the policy which might be determinative of the issues have not been adverted to or discussed. While it may appear that only a minor question of procedure is involved, actually, substantial substantive rights of the claimant-respondent, the respondent-petitioner and the owner-driver Bowers are involved.
A proper disposition of the issues involved requires a consideration of the legislative enactment as a whole. By chapter 759 of the Laws of 1958, the Legislature of the State of New York, for the avowed and laudable purpose of “ securing to innocent victims of motor vehicle accidents recompense for the injury and financial loss inflicted upon them” enacted article 17-A of the Insurance Law, sections 600 to 626, which created the Motor Vehicle Accident Indemnification Corporation and provided procedures to effectuate the intent of the enactment.
Article 17-A was deemed to be necessary, as experience had taught that the Compulsory Insurance Law failed to accomplish its full purpose and secure to innocent victims recompense for the injury and loss inflicted upon them by motor vehicle accidents caused by: (a) uninsured motor vehicles registered in another State; (b) “ hit and run ” motor vehicles; (c) vehicles registered in this State as to which there was not a policy of liability insurance in effect at the time of the accident; (d) stolen vehicles; (e) vehicles operated without permission of the owner; (f) insured motor vehicles where the insurer disclaims liability or denies coverage, and (g) unregistered motor vehicles (Insurance Law, § 600, subd. [2]).
The sine qua non of recovery is a showing by the victim of the accident that his or her injury resulted from fault of the driver of an “uninsured” motor vehicle. When the injured party has satisfactorily established fault on the part of the defendant from whom he or she is unable to collect a judgment, *34 h© or she may turn to the MVAIO for payment, not to exceed the statutory limitations.
To understand the legislative philosophy and procedure directives, it is necessary to divide the potential traffic victims into three groups. These groups are (1) “insured persons ”, (2) “ qualified persons ”, and (3) those excluded from either category. With the excluded group, we are not concerned. The procedures provided for securing the benefits intended, however, differ for “qualified persons” and “insured persons.” The “ insured persons” are those New York residents who either own an ‘ ‘ insured motor vehicle ’ or who in some way qualify as an insured under the omnibus clause in policies written on or after January 1, 1959, as authorized by section 167 of the New York State Insurance Law. A “ qualified person ” is one who is a resident of the State of New York who does not own an ‘ ‘ insured automobile ’ ’ or who at the time of the accident did not qualify as an insured under the omnibus clause required by section 167 of the Insurance Law, or whose policy was written before January 1, 1959.
From a study of section 600 et seq. it will be seen that the ‘ qualified person ’ ’ is not required to have any relationship to an “ insured motor vehicle ” in order to be a beneficiary of the legislation. It applies with equal vigor to pedestrians and nonowners of motor vehicles, as well as motor vehicle owners and passengers therein. All residents of the State other than “insured persons” who suffer injury as a result of the negligence of a noninsured motorist are intended to benefit thereby.
To avail himself of the benefits of the enactment of the provisions of section 601 of the Insurance Law, the “ qualified person” is required, pursuant to section 608 of the law, to follow definite procedural steps in order to enforce his claim, including the filing of a notice of claim pursuant to subdivision (c) of section 608 and to recover a final judgment in a court of competent jurisdiction as required by section 610. The provisions of section 612 provide that in order to obtain payment from the MVAIO the petitioner must establish that he has fully pursued and exhausted all remedies available to him for collecting upon the judgment against those persons adjudged liable for payment thereof. Under this procedure the MVAIO is not primarily liable to the “qualified person” (injured party) but guarantees against the uncollectibility of the judgment obtained in an amount not to exceed the limitations imposed by the statute.
*35 “ Insured persons ” are those New York residents who either own an insured motor vehicle or who in some way may qualify as an insured under the omnibus clause contained in the MVAIC indorsement attached to policies written after January 1, 1959, as authorized by section 167 of the New York State Insurance Law. Subdivision 2-a of section 167 was enacted simultaneously with section 600 et seq. and was amended in 1965. Under this subdivision it was provided that: No policy insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any natural person arising out of the ownership, maintenance and use of a motor vehicle by the insured shall be issued or delivered by any authorized insurer upon any motor vehicle then principally garaged or principally used in this state unless it contains a provision whereby the insurer agrees that it will pay to the insured, as defined in such provision, by the Motor Vehicle Indemnification Corporation, subject to the terms and conditions set forth therein to be prescribed by the board of directors of the Motor Vehicle Indemnification Corporation and approved by the superintendent, all sums, not exceeding a maximum amount or limit of ten thousand dollars exclusive of interest and costs, on account of injury to, or death of, one person, in any one accident, and the maximum amount or limit, subject to such limit for any one person so injured or killed, of twenty thousand dollars, exclusive of interest or costs, on account of injury to or death of, more than one person in any one accident, which the insured or his legal representative shall be entitled to recover as damages from an owner or operator of an uninsured motor vehicle, unidentified motor vehicle which leaves the scene of an accident, a motor vehicle registered in this state as to which at the time of the accident there was not in effect a policy of liability insurance, a stolen vehicle, a motor vehicle operated without permission of the owner, an insured motor vehicle where the insurer disclaims liability or denies coverage or an unregistered vehicle because of bodily injury, sickness or disease, including death resulting therefrom, sustained by the insured, caused by accident occurring in this state and arising out of the ownership, maintenance or use of such motor vehicle. Any such policy which does not contain the aforesaid provision shall be construed as if such condition were embodied therein.”
It is to be noted that the provisions of the indorsement required by this section differ substantially from the provisions of an insurance liability policy. In an insurance liability policy the insured is indemnified against financial loss to himself *36 arising out of the claims of others by reason of his (the insured’s) negligence, whereas, under the section quoted above, the insurer agrees to pay to the insured the damages that the insured shall be entitled to recover from an owner of an uninsured motor vehicle, an unidentified motor vehicle, etc. The payment to be made pursuant fco this policy is not based upon the liability of the insured, but is rather based upon the future liability to the insured of a then unknown third party. In effect, when a policy of insurance containing the required indorsement is issued, the insured obtains a $10,000 to $20,000 liability insurance policy covering any uninsured motor vehicle that in the future may cause injury to him or his passengers or to other persons defined as insured. He does not thereby increase the coverage for his own liability to others.
Unfortunately, the indorsement required pursuant to subdivision 2-a of section 167, has frequently and mistakenly been viewed as a liability policy. It is not under any circumstances a policy insuring the owner thereof against liability for damages to third parties arising out of his own negligence. The rights of a passenger in an automobile which is covered by an MV ATO indorsement are not rights against the insured, but rights which afford protection against damages from third parties. Such rights against third parties are derivative rights flowing from the insured owner’s right to protection against uninsured vehicles rather than from the liability of the insured owner for his own negligence.
The terms and conditions of a liability policy issued in the State of New York undertake as follows:
“ To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of [italics added]:
‘ ‘ coverage a bodily injury, sickness or disease, including death resulting therefrom, hereinafter called ‘ bodily injury ’, sustained by any person; ”.
The insurance agreement made part of the indemnification indorsement of the liability policy is distinctly different and undertakes as follows: To pay 1‘ Damages for Bodily Injury Caused by Uninsured Automobiles: MVAIC will pay all sums which the insured or his legal representative shall BE LEGALLY ENTITLED TO RECOVER AS DAMAGES from the owner or operator of an uninsured automobile because of bodily injury, sickness or disease, including death resulting therefrom, hereinafter called ‘ bodily injury ’, sustained by the insured, caused by accident and arising out of the ownership, maintenance or use of such uninsured automobile; provided, *37 for the purposes of this endorsement, determination as to whether the insured or such representative is legally entitled to recover such damages, and if so the amount thereof, shall be made by agreement between the insured or such representative and MVAIC or, if they fail to agree, by arbitration.” (Emphasis added.)
Thus, it is evident that there is a major difference between the insurance agreement contained in the liability policy and the indemnification indorsement. The former protects the insured owner for any fault on his part which results in injuries to others, whereas the indemnification indorsement protects the insured owner or any person in his automobile so as to compensate them for any injuries sustained by the negligent operation of an “uninsured motor vehicle.” Consequently the claimant-respondent is not an “insured person” under the statute or under the MVAIC indorsement.
Neither is the car in which the claimant-respondent was riding an “ uninsured vehicle ” under the statute or under the MVAIC indorsement, for the MVAIC indorsement in the policy issued pursuant to subdivision 2-a of section 167 defines the ‘ Uninsured Automobile” in paragraphs (1) and (2) of subdivision (b), as follows:
“ (b) Uninsured Automobile. The term uninsured automobile ’ means:
“ (1) an automobile with respect to the ownership, maintenance or use of which there is, in the amounts specified in the New York Motor Vehicle Financial Security Act, neither (i) cash or securities on deposit with the New York Commissioner of Motor Vehicles nor (ii) a bodily injury liability bond or insurance policy, applicable to the accident with respect to any person or organization legally responsible for the use of such automobile; or
“ (2) a hit-and-run automobile as defined; but the term ‘ uninsured automobile ’ shall not include:
“ (i) an automobile owned by the named insured or spouse ” (italics added).
Thus, it is unequivocally stated in the indemnification indorsement that the automobile in which the claimant-respondent was a passenger was not to be deemed an ‘ ‘ uninsured automobile. ’ ’
The automobile liability policy and the indorsement form one contract (Polland v. Allstate Ins. Co., 25 A D 2d 16, 17 [3rd Dept., 1966]). The indorsement is an integral part of the policy of insurance; they are construed as a whole (Birnbaum, v. Jamestown Mut. Ins. Co , 298 N. Y. 305, 310 [1948]).
*38 When the carrier notified the owner that it would deny him coverage, this did not lapse or cancel the liability insurance policy. All that this disclaimer meant was that for the purposes of this alleged accident the company would not indemnify the owner for damages he was called upon to pay if it was determined that the claimant was entitled to recover because of his (the insured’s) negligence in the operation of the insured automobile.
To sustain the claimant-respondent’s claim would give the owner additional protection which the law never intended and convert the MVAIC indorsement into an additional liability policy against which the insurance company could not exercise its rights of disclaimer for which provision was made in the policy.
In McCarthy v. MVAIC (16 A D 2d 35, 38) the court said:
‘ ‘ The MVAIC Law was not designed to supplement the insurance coverage of insured automobiles or to protect injured persons against risks which were not covered by the standard automobile liability policies.
1 ( This is plain upon a reading of the statute itself; the conclusion is strengthened by a reference to the explanatory statements issued by the interested State departments and the members of the Legislature in advocating the passage of the act and by the Governor in recommending and approving it. (N. Y. Legis. Annual, 1958, pp. 244, 299, 436, 473; see, also, Ward, New York’s Motor Vehicle Accident Indemnification Corp., 8 Buffalo L. Rev. 215, 230, 239.) There is not a shred of legislative history to support the view that the statute was designed to extend protection beyond that afforded by the standard liability insurance policies issued in the form approved by the Superintendent of Insurance.”
In the instant case there has been a denial of coverage by the insurer. To apply the interpretation sought by the claimant would, in effect, revive coverage by the insurer and would extend protection to such owner beyond that afforded by his insurance policy.
In the court’s opinion, the claimant-respondent is a “ qualified person ” and not an “insured person” vis-a-vis petitioner MVAIC with respect to her claim against MVAIC for damages for personal injuries allegedly sustained by reason of the negligence of an uninsured motorist. The remedy of a “ qualified person” as in this case is established by statute (Insurance Law, § 610). The pertinent statutes heretofore referred to outline the procedure to be followed by such “ qualified person.” *39 Thus, the claimant-respondent’s remedy is to institute direct action against the owner of the automobile in which she was a passenger and if unsuccessful in obtaining full payment of any judgment, she then could call upon the MVAIC for payment. The remedy of arbitration is only afforded to an “ insured person ” and not a “ qualified person.”
The claimant-respondent further resists this application on the ground that it is not timely made, to which the petitioner-respondent replies that the 10-day caveat under CPLR 7503 (subd. [c]) is not applicable unless the demand for arbitration includes the address of the party demanding the arbitration. A copy of the demand for arbitration is annexed to the moving-papers and indicates that the demand does not contain the address of the claimant Peggy Shumate which is necessary in order for the 10-day caveat to be applicable. The 10-day caveat is therefore not applicable (Matter of Allstate Ins. Co. [Neithardt], 24 A D 2d 941; Gallagher v. MVAIC, N. Y. L. J., Jan. 31, 1966, p. 15, col. 8).
In view of the foregoing, the court concludes that the petitioner is entitled to an order permanently staying the claimant-respondent from proceeding to arbitration.