William C. Heoht, Jr., J.
Motion by respondent for an order staying arbitration is denied. On November 26, 1966, the claimant, a passenger in an automobile owned and operated by one Craig Werner, was injured in a single-car automobile accident. On or about May 15, 1967, claimant’s attorney advised Mr. Werner that she was making claim against him for her injuries and Mr. Werner transmitted this letter to respondent on June 7, 1967. On August 7, 1967, claimant’s attorney communicated directly with" respondent (Werner’s insurer) requesting a conference with its claims representative. Thereafter, respondent sent a formal disclaimer letter to Werner, dated September 29, 1967, advising that it was disclaiming liability because of Werner’s failure to give due and timely notice of the accident, as required by Condition No. 1 of his policy. Respondent sent a copy of this disclaimer, together with a cover letter advising claimant that if she was not personally covered by any policy on an automobile in her household, she should file a claim with MVAIC within 10 days. Claimant’s attorney did so and was promptly advised by MVAIC that any uninsured motorist claim should be reported to and processed by respondent, the issuing insurer. Still within 10 days after receipt of the notice of disclaimer, claimant’s attorney forwarded to respondent formal proof of claim against it under the uninsured motorist provision of its policy. Respondent now takes the *53 position that this notice was untimely since Condition No. 3 of the standard New York automobile accident indemnification indorsement, requires that11 within 90 days or as soon as practicable, the insured or other person making claim shall give the company written notice of claim under this endorsement,” and notice of this accident was not given until August 7, 1967.
The question of the remedies available to an injured passenger in a single-car accident where the host’s insurer has disclaimed liability because of late notice, has been the subject of a number of conflicting and irreconcilable determinations, each of which claims to represent a true expression of the legislative intent in enacting the MVAIO law. Matter of Shumate (MV AIC) (50 Misc 2d 31 [Sup. Ct. Kings County, 1966]) is illustrative of the view which would deny claimant the protection of the uninsured motorist indorsement, and relegate her to the status of a “ qualified person ” (see Insurance Law, §§ 601, 608, 610). While a passenger such as claimant comes within the definition of an “ insured ” person, as defined in the standard indorsement, the indorsement also specifically excludes, from the definition of “ uninsured automobile ”, “an automobile owned by the name insured ”. Taking a literal approach, the court in Shumate excluded the injured passenger from coverage under the MYAIC indorsement, expressing its underlying philosophy as follows: “ The rights of a passenger in an automobile which is covered by an MVAIO indorsement are not rights against the insured, but rights which afford protection against damages from third parties. Such rights against third parties are derivative rights flowing from the insured owner’s right to protection against uninsured vehicles rather than from the liability of an insured owner for his own negligence ” (p. 36). “ To sustain the * * * claim would give the owner additional protection which the law never intended and convert the MVAIO indorsement into an additional liability policy against which the insurance company could not exercise its rights of disclaimer for which provision was made in the policy ” (p. 38).
Other courts have adopted a more liberal approach. These authorities deem it beyond question that when claimant became a passenger in the car she became an “ insured ” person under the uninsured motorist indorsement and the MVAIO statute (see, e.g., Matter of MV AIC [Goldman], 33 Misc 2d 703; Matter of MV AIC [Marshall], 39 Misc 2d 142). Notwithstanding express exclusions from the definition of ‘1 uninsured automobile ” contained in the indorsement, it has been stated that “ A disclaimer or denial of liability by an insurance company may place the automobile in the position of an uninsured automobile, *54 within the meaning of the MVAIC indorsement, if, hut only if, the effect of the disclaimer or denial is to deprive the injured person of the protection afforded by a standard automobile liability insurance policy.” (McCarthy v. MV AIC, 16 A D 2d 35, 40, affd. without opinion 12 N Y 2d 922.) With respect to the apparent inconsistencies in the definition sections of the indorsement, these courts have fallen back on the basic canon of construction that when called upon to interpret clauses of insurance policies, the courts will give to the language a construction most favorable to the insured, and one which results in coverage rather than denial of coverage (see Matter of Garcia [MV AIC], 41 Misc 2d 858, citing Appleton v. Merchants Mut. Ins. Co., 16 A D 2d 361). It is concluded that the uninsured motorist indorsement exists independently and apart from the policy to which it is annexed and remains viable even when the principal policy is rendered unenforcible by reason of a disclaimer.
“ Claimant herein has a right to seek redress for injuries against an ‘ uninsured ’ * * * and also has a right as a passenger to such redress against the operator of the vehicle who was covered hy a standard automobile policy when claimant entered the car. No action 'by the operator of said vehicle can deprive claimant of his rights and if the insurance carrier disclaims liability because of an act or failure to act on the part of the owner, then the vehicle in question may become ‘ uninsured ’ in the eyes of the MVAIC1 law, but the claimant remains an ‘ insured ’ passenger therein.” (Matter of Garcia [MV AIC], supra, p. 859.)
This court is of the opinion that this latter view is the more enlightened one, and that our principal concern should be to afford relief for the innocent victim rather than theorize about possible tangential benefits accruing to the wrongdoer. This view is strengthened hy the fact that, as a result of the 1965 amendment (L. 1965, ch. 322) to section 167 of the Insurance Law, no one but the vehicle owner would appear to have stand- ■ ing to question the validity of any disclaimer, and claimant is not in a position to compel such a challenge. In the instant case, claimant expressly disavows any right to challenge the disclaimer, so that the court need not further explore this troublesome question.
Respondent’s specific objection to arbitration herein is devoid of merit. In view of the fact that claimant filed her notice under the uninsured motorist indorsement within 10 days after receiving notice of disclaimer, no good faith assertion can be made that claimant’s notice was untimely.
*55 Following the submission of this application, claimant submitted proof that together with her demand for arbitration she served a notice pursuant to CPLR 7503 (subd. [c]). However, it also appears from the papers submitted that respondent’s instant motion was brought within the 10-day limitation period, thus preserving respondent’s right to challenge the existence of, and compliance with, the' agreement to arbitrate.
One final and rather obvious point perhaps deserves comment. The amount claimed in the demand for arbitration is $20,000. The statutory limit of liability under the uninsured motorist provision is $10,000. While claimant’s excessive demand does not render her notice of claim void, it is clear that the maximum possible recovery herein is limited to $10,000. The parties are directed to proceed to arbitration.